JS-6
O

# United States District Court
# Central District of California

| | |
|---|---|
| In re JEFFREY S. BEIER, | Case № 8:24-cv-00752-ODW |
| Debtor. | Bankruptcy Case № 8:23-bk-10898-TA |
| JEFFREY S. BEIER, | |
| Debtor-Appellant, | **MEMORANDUM OPINION** |
| v. | |
| THE BANK OF NEW YORK MELLON, | |
| Defendant-Appellee. | |

## I.    INTRODUCTION

Appellant Jeffrey S. Beier is a debtor before the United States Bankruptcy Court, Central District of California.  The bankruptcy court denied Beier's objection to a proof of claim that Appellee The Bank of New York Mellon ("BONY") filed reflecting a $2,786,180.50 secured claim.  (App. 397–407 ("Order Overruling Obj.").[1])  The court then denied Beier's motion for reconsideration.  (App. 463–68

---

[1] Beier filed an appendix at ECF Nos. 12 to 12-18 ("App."), and BONY filed a supplemental appendix at ECF Nos. 13-1 to 13-4 ("SA").  Each appendix is separately and consecutively paginated and consists of multiple volumes.  The Court cites to the consecutive page numbers without reference to appendix volume.

("Order Den. Mot. Recons.").)  Beier appeals both rulings.  (Appellant's Opening Br. ("Opening Br.") 1, ECF No. 11.)  For the reasons below, the Court **AFFIRMS** the bankruptcy court's rulings.[2]

## II.   BACKGROUND

### A.   The Loan

On March 2, 2005, Jefferey S. Beier and Toni Beier ("Borrowers") executed a Note in the principal amount of $1,470,000.00 in favor of Countrywide Home Loans, Inc. ("Countrywide").   (App. 230–33 ("Decl. Jae Min" or "Min Decl.") ¶ 4; *see* App. 234–38 ("Note").)  That same day, Borrowers executed a Deed of Trust, which secured the Note on the real property located at 10 Tuscon, Coto de Cara Area, California 92679 ("Property").  (App. 239–66 ("Deed of Trust").)  The Deed of Trust identifies Countrywide as "Lender" and Mortgage Electronic Registration Systems, Inc. ("MERS") as "the beneficiary" and "nominee for Lender and Lender's successors and assigns."  (Deed of Trust, App. 240–41.)

The Note was stamped with an indorsement to "JP Morgan Chase Bank as Trustee" ("JPMorgan").  (Note, App. 237.)  Both parties agree that the stamp was crossed out, though they dispute the effect of this.  (Appellee's Br. ("Opp'n Br.") 1–2, 11–12, ECF No. 13; Appellant's Reply Br. ("Reply Br.") 2–6, ECF No. 14.)  Attached to the Note is an allonge, which does not identify the payee.  (Note, App. 238.)

In June 2010, a Substitution of Trustee and Assignment of Deed of Trust was recorded with the county recorder, transferring the Deed of Trust from MERS to BONY.  (App. 96 ("June 2010 Assignment").)  Subsequently, on June 15, 2023, a Corrective Assignment of Deed of Trust was recorded, still reflecting a transfer of the Deed of Trust from MERS to BONY.   (App. 267–69 ("Corrective Assignment").) BONY has had possession of the Note since at least July 12, 2023, when it filed its proof of claim ("Proof of Claim").  (Min Decl. ¶ 6, App. 231.)

---

[2] After considering the briefs and excerpts of record filed by each party, the Court found that oral argument would not significantly aid the Court's analysis because the facts and legal arguments are adequately presented in the briefs and record.  Fed. R. Bankr. P. 8019(b)(3).

**B.     Bankruptcy Proceedings**

Prior to the current bankruptcy, Beier filed for bankruptcy four times from April 2008 to March 2023.  (Opp'n Br. 2–4; SA 9, 11, 27, 29, 56, 58, 378–79.)  Beier also initiated four state court suits, one against the loan servicer and three against BONY.  (Opp'n Br. 2–4; SA 67–68, 71, 78, 82–83, 126, 225.)

On April 28, 2023, Beier filed the instant chapter 11 bankruptcy, which was later converted to chapter 7.  (App. 1 ("Docket Sheet").)  On July 12, 2023, BONY filed a Proof of Claim reflecting a total secured claim of $2,786,180.50, secured by the Property.  (App. 29–100 ("Proof of Claim").)  On November 15, 2023, the bankruptcy court entered an order granting the sale of the Property for $3.2 million, including authorization for the trustee to make a $2.4 million interim distribution to BONY and deposit the balance in a trust account pending settlement negotiations or outcome of future litigation between Beier and BONY.  (App. 196–99 ("Sale Order") ¶¶ 4, 9.)  The court authorized the trustee to disburse the remaining sale proceeds to BONY if Beier failed to bring litigation within thirty days of the Sale Order.  (Sale Order ¶ 10, App. 198.)  On November 30, 2023, the sale closed and the trustee issued the $2.4 million interim distribution to BONY.  (SA 686.)

**C.     Beier's Objection to BONY's Proof of Claim**

On December 1, 2023, Beier filed an objection to BONY's Proof of Claim. (App. 102–09 ("Beier's Obj.").)  As relevant to this appeal, Beier raised two issues with BONY's Proof of Claim.[3]  First, Beier questioned BONY's ownership of the Note and Deed of Trust.  (Beier's Obj., App. 103–04.)  He argued that BONY provided no evidence to support that it was the successor trustee to JPMorgan.[4] (Beier's Obj., App. 104.)  He also argued that there is broken chain of title with

---

[3] The Court does not discuss objections that Beier lodged with the bankruptcy court but which he does not raise on appeal.

[4] BONY identifies as BONY, "formerly known as The Bank of New York, as Successor Trustee to JPMorgan Chase Bank, N.A., as Trustee for the Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2005-04."  (Opp'n 2 n.1.)

respect to the Deed of Trust because no document shows a transfer from Countrywide or a transfer to MERS such that MERS could transfer the Deed of Trust to BONY. (Beier's Obj., App. 104–05.)  Second, Beier contended that the Note is unenforceable because the Sale Order released the lien and the statute of limitations for enforcement of the Note elapsed.  (Beier's Obj., App. 108.)

BONY opposed Beier's objection.  (App. 203–26 ("Opp'n Obj.").)  BONY asserted three arguments relevant to this appeal.  First, BONY argued that issue preclusion, based on rulings in Beier's prior bankruptcy and adversary proceedings, estops Beier from challenging its Proof of Claim.  (Opp'n Obj., App. 214.)  Second, BONY, as holder of the Note and Deed of Trust and beneficiary of record, asserted standing to file its Proof of Claim.  (Opp'n Obj., App. 215–18.)  Lastly, BONY argued that it still has a right to the Property's sale of proceeds.  (Opp'n Obj., App. 219–23.)

On January 9, 2024, the bankruptcy court held a hearing on Beier's objection. (App. 376–96 ("Obj. Hr'g Tr.").)  On January 24, 2024, the court entered an order overruling Beier's objection.  (Order Overruling Obj.)  As relevant to this appeal, the court first addressed Beier's argument that BONY does not hold the Note and Deed of Trust.  (Order Overruling Obj., App. 401.)  The court explained that, under California law, a person is a "holder" entitled to enforce an instrument if the person is "in possession" of that instrument and (1) is identified on the instrument or (2) if the instrument does not state a payee.  (Order Overruling Obj., App. 402 (quoting Cal. Com. Code § 1201(b)(21)(A)).)  The court then determined that Countrywide—the Note's original beneficiary—indorsed the Note in blank and that BONY currently possesses the Note.  (Order Overruling Obj., App. 402.)  Even though the Note was originally indorsed to JPMorgan, the court found that it "was crossed out and voided." (Order Overruling Obj., App. 402.)  As to the Deed of Trust, the court traced Countrywide's transfer to MERS, and MERS's transfer to BONY, providing BONY standing to enforce the instrument and file the Proof of Claim.  (Order Overruling Obj., App. 402.)

Second, the court held that while issue preclusion was not proper, "further litigat[ion] on this issue of chain of title is likely precluded under the related doctrine of claim preclusion as it undoubtedly arose from the common nucleus of operative facts, or from a single transaction, that was decided by the prior litigation." (Order Overruling Obj., App. 405.)   Last, the court concluded that even if the statute of limitations barred BONY from foreclosing on the property, it does not bar BONY from recovering on the Property's sale proceeds. (Order Overruling Obj., App. 406.)

Based on its findings, the court determined that BONY has a valid proof of claim and overruled Beier's objection. (Order Overruling Obj., App. 407.)

**D.    Motion for Reconsideration**

On February 7, 2024, Beier filed a Motion for Reconsideration of the bankruptcy court's order overruling his claim objection.   (App. 408–19 ("Mot. Recons.").)  Beier argued that he found evidence that undermines BONY's chain of title. (Mot. Recons., App. 410.)  Specifically, Beier purportedly discovered evidence that a third party—Wells Fargo Bank, N.A. ("Wells Fargo")—had claimed ownership of the Note.  (Mot. Recons., App. 410.)   In support, Beier cited a "Supplemental Memorandum" filed in his 2008 prior bankruptcy, where Wells Fargo, through MERS, asserted that Countrywide assigned it the Note.   (Mot. Recons., App. 415; *see* App. 423–31 ("Suppl. Mem.").)   Beier seized on the court's language in its order overruling his objection, that "no rival claimant has emerged which one would have expected on a $2.7 million obligation were there really a question."   (Order Overruling Obj., App. 403.)  Based on this "new" evidence, Beier asked the court to reconsider its prior ruling because its order "was premised on the incorrect factual assumption that no other party had come forward claiming to own the" Note and Trust. (Mot. Recons., App. 415.)  Therefore, Beier argued, BONY could not satisfy its burden that it owns the Note and Deed of Trust. (Mot. Recons., App. 415–16.)

BONY opposed the motion.   (App. 432–47 ("Opp'n Mot. Recons.").)   On March 5, 2024, the bankruptcy court held a hearing on Beier's Motion for

Reconsideration.  (App. 453–62 ("Recons. Hr'g Tr.").)  On March 21, 2024, the court denied the motion.  (Order Den. Mot. Recons, App. 432–47.)  In denying the motion, the court first held that Beier could not demonstrate the evidence was newly discovered, as MERS filed the Supplemental Memorandum in Beier's 2008 bankruptcy.  (Order Den. Mot. Recons, App. 467.)  Second, the court found no clear error of fact, as its denial of Beier's objection "was not solely based on the absence of a rival claimant, but also on the evidence provided by BONY that qualified it as a note holder and beneficiary of the deed of trust."  (Order Den. Mot. Recons, App. 467.)  Finally, the court noted that "no evidence has been provided to show that Wells Fargo is currently the note holder and beneficiary (nor claims to be) at any time since 2008, nor has any representative from Wells Fargo come forward stating that they are a rival claimant in this current bankruptcy case."  (Order Den. Mot. Recons, App. 467.)

**E.    Appeal**

On April 5, 2024, Beier filed his Notice of Appeal in this Court.  (Notice of Appeal, ECF No. 1.)  On October 24, 2024, he filed his opening brief.  (Opening Br.)  On November 18, 2024, BONY filed its opposition brief.  (Opp'n Br.)  On December 2, 2024, Beier filed a reply.  (Reply Br.)  On January 15, 2025, the Court took the matter under submission without oral argument.  (ECF No. 15.)

## III.    JURISDICTION AND STANDARDS OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 158(a) and is sitting as a single-judge court of appeal.  The Court reviews the bankruptcy court's conclusions of law de novo and its factual findings for clear error.  *In re Salazar*, 430 F.3d 992, 994 (9th Cir. 2005).

## IV.    DISCUSSION

Beier raises two issues on appeal: (1) whether the bankruptcy court erred in overruling Beier's objection to BONY's Proof of Claim, and (2) whether the bankruptcy court erred in denying Beier's Motion for Reconsideration.  (Opening Br. 2–3.)

1    **A.    Claim Objection**

2         Beier challenges the bankruptcy court's denial of his claim objection on three

3    grounds.  First, Beier contends that the bankruptcy court impermissibly shifted the

4    burden of proof to him to disprove BONY's Proof of Claim.  (Opening Br. 15–16.)

5    Second, he argues that the bankruptcy court erred in finding that BONY is the holder

6    of the claim it asserts.  (*Id.* at 16.)  Third, he maintains that the Sale Order and statute

7    of limitations bar BONY's claim.  (*Id.* at 16–19.)

8         *1.    Burden of Proof*

9         Beier's first challenge on appeal is that the bankruptcy court impermissibly

10    shifted the burden of proof to him, instead of placing the burden on BONY.  (*Id.*

11    at 14–16.)  The Court reviews the bankruptcy court's allocation of burden of proof de

12    novo.  *See Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1033 (9th Cir.

13    2020).

14         The Bankruptcy Code, Bankruptcy Rules, and case law "have put in . . . place a

15    general procedure to allocate the burdens of proof and persuasion in determining

16    whether a claim is allowable."  *Lundell v. Anchor Constr. Specialists, Inc. (In re

17    Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000).  Under 11 U.S.C. § 502(a), "[a] proof

18    of claim is deemed allowed unless a party in interest objects."  *Id.*  A proof of claim is

19    "*prima facie* evidence of the validity and amount of the claim."  *Id.* (quoting Fed. R.

20    Bankr. P. 3001(f)).

21         Once a party in interest objects to a proof of claim, there is a "dispute which is a

22    contested matter . . . and must be resolved after notice and opportunity for hearing

23    upon a motion for relief."  *Id.*  In this circumstance, "the proof of claim provides

24    'some evidence as to its validity and amount' and is 'strong enough to carry over a

25    mere formal objection without more.'"  *Id.* (quoting *Wright v. Holm (In re Holm)*,

26    931 F.2d 620, 623 (9th Cir. 1991)).  Therefore, to overcome a proof of claim, an

27    objector must provide "sufficient evidence" that "show[s] facts tending to defeat the

28    claim by probative force equal to that of the allegations of the proofs of claim

themselves." *Id.* (second quoting *In re Holm*, 931 F.2d at 623).  If an objector "produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Id.*

Beier does not direct the Court to specific language the bankruptcy court used to indicate that it had shifted the burden of proof to him but cites generally to the bankruptcy court's conclusion that BONY's proof of claim is valid.  (*See* Opening Br. 14–16.)  Nevertheless, upon review of the order, the Court concludes that the bankruptcy court used the appropriate standard.  First, the bankruptcy court recited the very standard for which Beier advocates, and which the Court lays out above.  (*See* Order Overruling Obj., App. 401; Opening Br. 13–14.)  Second, the bankruptcy court employed language indicating that it placed the burden on BONY, and found that BONY met its burden, not that Beier failed to meet his.  (Order Overruling Obj., App. 401 ("BONY readily establishes its standing . . . ."); *id.* at 402–03 ("BONY's opposition had provided sufficient explanation of how it is the proper holder of both the Promissory Note and Deed of Trust.").)

As best as the Court can tell, Beier takes issue with the bankruptcy court's following statement in its recitation of facts:

> Debtor questions how BONY became the owner of the promissory note and the deed of trust based on the proof of claim and its alleged chain of title issues.  But the Jae Min declaration submitted by BONY is the only *evidence* presented and this evidence confirms that BONY is the holder of the note through acquisition and authorized servicers.  Whatever theory debtor might have as to why BONY might not be the current holder is not backed up by anything except argument.

(Order Overruling Obj., App. 399.)  This statement is factually accurate; Beier did not present any evidence but rather challenged BONY's Proof of Claim based on the documents BONY provided with its claim.  (*See* Beier's Obj.)  And the court did not reject Beier's objection solely because he failed to offer evidence.  Instead, it found

that BONY's proffered evidence supported a denial of the objection. The bankruptcy court reiterated this in its order on Beier's Motion for Reconsideration, highlighting that its prior ruling was based "on the evidence *provided by BONY* that qualified it as a note holder and beneficiary of the deed of trust." (Order Den. Mot. Recons., App. 467 (emphasis added).) Had Beier offered evidence that sufficiently undermined BONY's evidence, then BONY may not have met its burden. But Beier did not offer any such evidence, and the bankruptcy court's accurate observation about this does not mean it improperly shifted the burden of proof.

Accordingly, by placing the burden on BONY, the bankruptcy court used the correct standard of proof in evaluating Beier's claim objection.

### 2. Holder of Note and Deed of Trust

Next, Beier argues that the bankruptcy court erred in concluding that BONY is the holder of the Note and Deed of Trust. (Opening Br. 15–16.) Beier contends that he "showed precisely the issues with the chain of title and why [BONY] had not shown that it was the holder of the claim," and BONY failed to "present the evidence necessary to fill in these gaps." (*Id.* at 15.)

Whether BONY is the holder of the Note and Deed of Trust is a question of state law. *See Butner v. United States*, 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."); *Kirschner v. Blixseth*, No. 2:11-cv-08283-GAF (SPx), 2014 WL 12573851, at *8 (C.D. Cal. June 18, 2014) (applying California law in determining holder of note), *aff'd*, 667 F. App'x 643 (9th Cir. 2016).

### a. Holder of the Note

California law provides that the persons entitled to enforce an instrument include "the holder of the instrument." Cal. Com. Code § 3301(a). A "holder" is "the person in possession of a negotiable instrument that is payable either to bearer or, to an identified person that is the person in possession . . . " *Id.* § 1201(b)(21)(A). A "bearer" is "a person in possession of a negotiable instrument, document of title, or

certificated security that is payable to bearer or indorsed in blank.  *Id.* § 1201(b)(5).
In other words, an instrument is payable to bearer if it "[d]oes not state a payee."  *Id.*
§ 3109(a)(2); *see Lane v. Bank of N.Y. Mellon (In re Lane)*, 959 F.3d 1226, 1228
(9th Cir. 2020) ("Countrywide later endorsed the note 'in blank,' which made it
payable to the bearer.").  Additionally, "[f]or the purpose of determining whether a
signature is made on an instrument, a paper affixed to the instrument is a part of the
instrument."  Cal. Com. Code § 3204.  An "allonge" is one such type of paper.  *See
Allonge*, Black's Law Dictionary (12th ed. 2024) (defining "allonge" as "[a] slip of
paper sometimes attached to a negotiable instrument for the purpose of receiving
further indorsements when the original paper is filled with indorsements"); *Branch
Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 757 n.1 (9th Cir. 2017) (same)
(quoting an earlier edition of Black's Law Dictionary).

While the Note indicates that it was originally indorsed to JPMorgan, the
bankruptcy court concluded that this indorsement was crossed out and voided.  (Order
Overruling Obj., App. 402; *see* Note, App. 237; Min Decl. ¶ 5, App. 231 ("The
endorsement stamp from Countrywide Home Loans, Inc. to JPMorgan Chase Bank, as
Trustee on the Note was voided.").)  This conclusion of fact is not clearly erroneous.
*See In re Lundell*, 223 F.3d at 1040 (evaluating whether bankruptcy court's findings
regarding proof of claim were clearly erroneous).  On review of the Note, the original
indorsement to JPMorgan was crossed out.  This conclusion is further supported by
the allonge, issued by Countywide and attached to the Note.  (*See* Note, App. 238;
Min Decl. ¶ 6, App. 231 (declaring that the allonge is attached to the Note).)
Consistent with the crossed out original indorsement, the allonge does not identify a
payee.  (*See* Note, App. 238 (leaving blank line after "Pay to the Order of").)[5]

---

[5] Beier states that the allonge "fails to identify the payee."  (Opening Br. 8.)  As noted, this does not
negate the allonge's effect; rather, it means that allonge is indorsed in blank.  *See, e.g.*, Cal. Com.
Code § 3109(a)(2).

As a legal matter, Beier asserts that a crossed-out indorsement is not an indorsement in blank. (Reply Br. 4.) Neither party nor the bankruptcy court identified a court that has previously addressed this issue.

The California Commercial Code indicates an answer. California Commercial Code section 3207 provides:

> Reacquisition of an instrument occurs if it is transferred to a former holder, by negotiation or otherwise. A former holder who reacquires the instrument may cancel indorsements made after the reacquirer first became a holder of the instrument. If the cancellation causes the instrument to be payable to the reacquirer or to bearer, the reacquirer may negotiate the instrument. An indorser whose indorsement is canceled is discharged, and the discharge is effective against any subsequent holder.

This provision contemplates that a former holder may cancel indorsements after it reacquires the instrument. One way to cancel an indorsement is by crossing it out. *See* Unif. Com. Code § 3-207 cmt. (stating, in comment of provision identical to California Commercial Code section 3207, that a former holder can obtain holder status "by striking the former holder's indorsement and any subsequent indorsements"). Therefore, crossing out an indorsement can have the effect of cancelling that indorsement.

Section 3207 also supports that, in certain circumstances, cancelling an indorsement can result in the instrument being indorsed in blank. The statute provides that cancellation can "cause[] the instrument to be payable to the reacquirer or to *bearer*." Cal. Com. Code § 3207 (emphasis added). As noted, one way an instrument is payable to bearer is if it "[d]oes not state a payee." *Id.* § 3109(a)(2). The statute thus recognizes that cancelling an indorsement can result in an instrument indorsed in blank.

Accordingly, the evidence supports that Countrywide Home Loans, Inc., who issued the loan and originally indorsed it to JPMorgan, crossed out the original indorsement and attached the allonge to the Note. This resulted in an indorsement in

1    blank, meaning that the holder of the loan is entitled to payment.  *See id.* § 3301(a).
2    Based on the evidence before the Court, BONY unquestionably is the holder of the
3    Note and has been since it filed its Proof of Claim.  (Min Decl. ¶ 6, App. 231.)  Thus,
4    the bankruptcy court did not err in concluding that BONY holds the Note.

5                            b.  Holder of the Deed of Trust

6        Under California law, a deed of trust is a lien on property.  *Monterey S.P.*
7    *P'ship v. W.L. Bangham, Inc.*, 49 Cal. 3d 454, 460 (1989).  "[O]nly the 'true owner'
8    or 'beneficial holder' of a Deed of Trust can bring to completion a nonjudicial
9    foreclosure."  *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 928 (2016)
10   (alteration in original).

11       Beier argues that there "is a broken chain of title," so the bankruptcy court erred
12   in concluding that BONY holds beneficiary interest in the Deed of Trust.  (Opening
13   Br. 7.)  Beier is incorrect because chain of title is not broken.  (Order Overruling Obj.,
14   App. 402–03.)  The Deed of Trust identifies Countrywide as "Lender" and MERS as
15   "the beneficiary" and "nominee for Lender and Lender's successors and assigns."
16   (Deed of Trust, App. 240–41.)  It further states that:

17           Borrower understands and agrees that MERS holds only legal title to the
18           interests granted by Borrower in this Security Instrument; but, if
19           necessary to comply with law or custom, MERS, (as nominee for Lender
             and Lender's successors and assigns), has the right: to exercise any or all
20           of those interests, including, but not limited to, the right to foreclose and
21           sell the Property; and to take any action required of Lender including, but
             not limited to, releasing or canceling this Security Instrument.
22

23   (Deed of Trust, App. 241–42.)  This language allows MERS to assign the Deed of
24   Trust.  *See, e.g.*, *Lopez v. United Guar. Residential Ins. Co.*, No. 2:16-cv-07898-CAS
25   (SKx), 2016 WL 7117244, at *4 (C.D. Cal. Dec. 5, 2016) (interpreting identical
26   language); *Schwartz v. U.S. Bank, Nat'l Ass'n*, No. 2:11-cv-08754-MMM (JCGx),
27   2012 WL 10423214, at *6 & n.26 (C.D. Cal. Aug. 3, 2012) (same).

28

On June 7, 2010, MERS, as beneficiary of the Deed of Trust, assigned the Deed of Trust to BONY, which was recorded.  (June 2010 Assignment.)  Then, on June 15, 2023, MERS executed a "Corrective Assignment" to BONY to add "nominee verbiage" to the June 2010 assignment, which was recorded.  (Corrective Assignment.)  Based on these assignments, the Deed of Trust can be traced from Countrywide and MERS to BONY.

Accordingly, the bankruptcy court did not err in concluding that BONY is the holder of the Deed of Trust.[6]

### 3.    Entitlement to Sale Proceeds

Beier also argues that the bankruptcy court erred in deciding that BONY has a secured claim in the sale proceeds of the Property.  (Opening Br. 10–12, 17–18.)

On November 15, 2023, the bankruptcy court entered the Sale Order through which it granted the sale of the Property for $3.2 million, including authorization for the trustee to make a $2.4 million interim distribution to BONY and deposit the balance in a trust account pending settlement negotiations or outcome of future litigation.  (Sale Order, App. 196–98.)  On November 30, 2023, the sale closed, and the trustee distributed $2.4 million to BONY.  (SA 686–87.)  In the Sale Order, the court ordered that "[t]he sale is free and clear of any and all liens and interests, including" BONY's Deed of Trust.  (Sale Order ¶ 5, App. 197.)  The court did not explicitly state that BONY's liens would attach to the sale proceeds of the Property, (Sale Order), so Beier argues that BONY does not have a claim against those proceeds, (Opening Br. 17–18).

---

[6] BONY also argues that Beier cannot challenge its Proof of Claim based on claim preclusion. (Opp'n 15–20.)  However, it is not clear whether the bankruptcy court actually decided that Beier's objection is precluded or merely explained which way it was leaning if it had to decide the issue. The court stated that "further litigating on this issue of chain of title is *likely* precluded under the related doctrine of claim preclusion."  (Order Den. Obj. 405 (emphasis added).)  Given the ambiguity as to whether the bankruptcy court decided this issue, and the Court's finding that the bankruptcy court did not err in concluding BONY is the holder of the Note and Deed of Trust, the Court does not address whether Beier's objection is barred by claim preclusion.

In rejecting this argument, the bankruptcy court held that "[w]hile it would perhaps have been clearer to expressly attach the lien" in the Sale Order, the lien did attach to the sale proceeds. (Order Overruling Obj., App. 406–07.) The court noted that Beier offered no case law to support that a Sale Order must have explicit language for a lien to attach. (Order Overruling Obj., App. 407.) And it held that "[i]n this context it is abundantly clear that BONY's claim was authorized in bulk to be paid directly . . . and only a smaller balance was to be separately held pending litigation." (Order Overruling Obj., App. 406–07.) The court further questioned whether, under the facts of this case, it even had the authority to make a lien disappear after a sale order. (Order Overruling Obj., App. 406); *see* 11 U.S.C. § 363(f). On these bases, the court found "that the BONY lien attached to the sale proceeds of the Property and the lack of formal language to that effect was inconsequential in this context." (Order Overruling Obj., App. 406–07.) On appeal, Beier argues—again without citing any authority—that the bankruptcy court must have explicitly attached the liens to the sale proceeds in the Sale Order. (Opening Br. 17–18.)

"[I]t is well recognized that a bankruptcy court has the power to interpret and enforce its own orders." *Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard)*, 729 F.3d 1279, 1289 (9th Cir. 2013). A court reviews the bankruptcy court's interpretation of its own order for abuse of discretion. *E.g.*, *Rosales v. Wallace (In re Wallace)*, 490 B.R. 898, 906 (B.A.P 9th Cir. 2013) ("We accord substantial deference to the bankruptcy court's interpretation of its own orders and will not overturn that interpretation unless we are convinced it amounts to an abuse of discretion.").

Had the court stated in the Sale Order that the sale of the Property was free and clear of BONY's lien, without more, perhaps Beier would be correct that BONY's lien did not attach to the sale proceeds. However, the Sale Order both includes and omits language that supports the bankruptcy court's interpretation that BONY's lien attached to the sale proceeds of the Property.

In the Sale Order, the bankruptcy court authorized the trustee to make a
$2.4 million "initial distribution" to BONY "and deposit the balance of the net sale
proceeds in a trust account pending settlement negotiations or the outcome of
litigation." (Sale Order ¶ 9, App. 198.)  Further, the court provided the trustee
discretion "to make a further disbursement to BONY if [Beier] fails to commence
litigation within 30 days of" the Sale Order. (Sale Order ¶ 10, App. 198.)  Had the
bankruptcy court intended to detach the sale proceeds from BONY's lien, there would
be no basis for the trustee to distribute the sale proceeds to BONY.  There would have
also been no reason to place the remaining sale proceeds with the trustee pending
litigation between BONY and Beier if BONY could not recover the proceeds upon
winning the litigation.

Further, in the Sale Order, the bankruptcy court did not make a finding that
would permit it to authorize the sale of the Property without BONY's lien attaching to
the proceeds.  Section 363(f) provides that the sale of estate property be made free and
clear of liens and other interests "if one of several criteria are met." *In re Groves*,
652 B.R. 104, 114 (B.A.P. 9th Cir. 2023), *aff'd*, No. 23-60040, 2024 WL 3041548
(9th Cir. June 18, 2024); *see* 11 U.S.C. §§ 363(e), (f)(1)–(5), (g), (h) (providing for
when the trustee may sell property free and clear).  Beier does not refute this premise
but argues that if the bankruptcy court improperly authorized the sale without
attaching BONY's liens as required by § 363(f), the proper remedy is for BONY to
appeal the Sale Order. (Reply Br. 12.)  But this misstates the significance of the
bankruptcy court not having a basis to allow the sale free and clear of BONY's liens.
The significance is not that the bankruptcy court may have erred in releasing the liens;
rather, the fact that the court had no basis to allow a free and clear sale is further
evidence that the court *did not* release the liens in the first instance.

While, as the bankruptcy court recognized, (Over Overruling Obj., App. 406–
07), it would have been clearer to explicitly state that it was attaching the lien to the
sale proceeds, the language and context of the Sale Order supports that the court did

1   indeed attach BONY's lien to the sale proceeds.  Accordingly, the bankruptcy court

2   did not abuse its discretion in interpreting its Sale Order as having attached BONY's

3   lien to the Property's sale proceeds.

4        Based on the foregoing, the Court rejects each of Beier's challenges on appeal

5   to the bankruptcy court's order overruling Beier's claim objection and affirms that

6   order.

7   **B.    Motion for Reconsideration**

8        Beier also appeals the bankruptcy court's denial of his Motion for

9   Reconsideration.  (Order Mot. Recons., App. 463–68)

10        Federal Rule of Bankruptcy Procedure 9023, which incorporates Federal Rule

11   of Civil Procedure 59(e), permits a party to file a motion for reconsideration.  A court

12   may grant a motion for reconsideration only in certain circumstances.  *389 Orange St.*

13   *Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) ("Under Rule 59(e), a motion

14   for reconsideration should not be granted, absent highly unusual circumstances, unless

15   the district court is presented with newly discovered evidence, committed clear error,

16   or if there is an intervening change in the controlling law.")  On appeal, Beier argues

17   that the bankruptcy court should have granted his Motion for Reconsideration because

18   the court "committed clear error" in basing its claim objection ruling "on an error of

19   fact," and reconsideration is needed "to correct a manifest error" and avoid a

20   "manifest injustice."  (Opening Br. 20, 22.)

21        As to his contention of "manifest injustice," Beier repeats his position that the

22   bankruptcy court applied the wrong burden of proof to adjudicate his claim objection.

23   (*Id.* at 22.)  For the reasons discussed above, the bankruptcy court used the appropriate

24   burden of proof.  Therefore, the Court affirms the bankruptcy court's denial of Beier's

25   Motion for Reconsideration on this basis.

26        Beier also argues that the bankruptcy court made a clear and manifest error by

27   "premis[ing]" its denial of his claim objection "on the incorrect factual assumption

28   that no other party had come forward to own the" Note and Deed of Trust.  (Opening

Br. 21.)  In its order overruling Beier's objection, the court "note[d] that no rival claimant has emerged which one would have expected on a $2.7 million obligation were there really a question."  (Order Overruling Obj., App. 403.)  After the court denied his claim objection, Beier purportedly discovered a "Supplemental Memorandum" filed in 2008 in one of his prior bankruptcies.  (Order Den. Recons., App. 465.)  In this document, filed by MERS on behalf of Wells Fargo, Wells Fargo claimed to hold the Note and Deed of Trust.  (Suppl. Mem., App. 424–26.)  Beier contends that the bankruptcy court erred in not reconsidering its claim objection order in light of this evidence, which he claims undermines the court's conclusion of fact that no other person had claimed ownership of the Note and Deed of Trust.  (Opening Br. 21.)  Further, Beier asserts that the court "manifestly erred by not insisting on complete chain of title when it is evident that others have asserted this same claim in the past."  (*Id.*)

Beier asserts the basis for reconsideration is for clear and manifest error, but he relies on previously unpresented evidence to support his motion.  This makes Beier's motion really one for reconsideration based on newly discovered evidence.  However, as the bankruptcy court correctly found, the Supplemental Memorandum did not constitute "newly discovered evidence" for purposes of Rule 59(e) reconsideration.  (*See* Order Den. Recons., App. 467.)  This document was filed in one of Beier's prior bankruptcies, meaning Beier was aware of and had access to this evidence prior to the hearing on his claim objection.  *See, e.g., Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 892 n.6 (9th Cir. 1994) ("Evidence is not newly discovered if it was in the party's possession at the time . . . or could have been discovered with reasonable diligence.").

Even if the Supplemental Memorandum had been newly discovered, such that it could be considered on a motion for reconsideration, the bankruptcy court correctly denied Beier's motion.  As the court noted, its claim objection order "was not based solely on the absence of a rival claimant."  (Order Den. Recons., App. 467.)  For the reasons discussed above, the court's order was properly based "on the evidence

provided by BONY that qualified it as a note holder and beneficiary of the deed of trust." (Order Den. Recons., App. 467.)  The Supplemental Memorandum does not alter this analysis.  Beier has not offered any evidence that Wells Fargo—or any other person—currently holds the Note or Deed of Trust that undermines the bankruptcy court's prior conclusion.  In fact, the Supplemental Memorandum is consistent with BONY's current claim to the Note and Deed of Trust.  Wells Fargo could have held the Note in 2008 through possession.  (*See* Suppl. Mem., App. 426 ("MERS has established that Wells Fargo is in possession of the Note.")); Cal. Com. Code §§ 1201(b)(21)(A), 3109(a)(2), 3301(a).  BONY is now in possession of the Note.  And, when it filed the Supplemental Memorandum, MERS held the lien rights under the Deed of Trust, (*see* Suppl. Mem., App. 425), which it later assigned to BONY, (*see* June 2010 Assignment, App. 96; Corrective Assignment, App. 267–69.)

Accordingly, the bankruptcy court properly denied Beier's Motion for Reconsideration.

## V.    CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Bankruptcy Court's Orders on Beier's Claim Objection and Motion for Reconsideration.  The Clerk of the Court shall close this case.


**IT IS SO ORDERED.**


June 27, 2025


_____
        **OTIS D. WRIGHT, II**
    **UNITED STATES DISTRICT JUDGE**